**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **ANTHONY JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL NO. 3:09CV104** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Anthony Jones, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

for summary judgment (Docket no. 13) be DENIED; that Defendant's motion for summary judgment (Docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his current applications for DIB and SSI on September 28, 2005, claiming disability with an alleged onset date of November 15, 2004. (R. at 91, 97, 112.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 73, 81, 84.) Plaintiff requested a hearing and on June 20, 2007, represented by counsel, he testified before an ALJ. (R. at 18-58.) On August 31, 2007, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because, based on his age, education, work experience, and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 8-17.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process

3

that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a Vocational Expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the knees, obesity, degenerative changes in the lumbosacral spine, left carpal tunnel syndrome, arthritis of the shoulders, rotator cuff injury to the left shoulder, borderline to low average intellectual functioning, and depression, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-11.) The ALJ next determined that Plaintiff had the RFC to perform unskilled light work, noting that Plaintiff's symptoms "are not as severe or frequent as alleged and would not preclude the performance of a significant range of unskilled light work." (R. at 20-21.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform past relevant work as a construction laborer, commercial cleaner, dishwasher, and chicken dresser because of the levels of exertion required in each position. (R. at 15.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 16.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 17.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the

alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) Although not clearly articulated by the Plaintiff, this Court interprets his argument as an assertion that the ALJ's conclusion that Plaintiff had the RFC to perform unskilled light work is not supported by substantial evidence in the record.[6] (Pl.'s Mem. in Supp. of Mot. for Summ. J. "Pl.'s Mem." at 1-11.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence with the application of the correct legal standard and should therefore be affirmed. (Def.'s Mot. for Summ. J. "Def.'s Mem." at 14-21.)

**A. Plaintiff contends that the ALJ's conclusion that Plaintiff had the RFC to perform unskilled light work is not supported by substantial evidence.**

Plaintiff argues that the ALJ's assessment regarding Plaintiff's RFC is not supported by substantial evidence of record. (Pl.'s Mem. at 1-11.) Specifically, Plaintiff asserts that his condition has not improved since the hearing before the ALJ and that he is able to present medical evidence of impairments that have developed since the hearing. (Pl.'s Mem. at 1-11.)

At step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, an ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(5)(i). In analyzing a claimant's physical abilities, an ALJ will first

---

[6] The Court notes that Plaintiff has submitted extra-record "after-acquired" evidence in his brief. The Court cannot, however, consider such evidence because it does not relate to Plaintiff's condition during the relevant period between the filing of his application and the ALJ's decision. See 20 C.F.R. §§ 404.620, 416.330 (stating than an application for benefits remains in effect until the date of an ALJ's decision); see also Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (holding that in reviewing an ALJ's decision, a court is limited to determining "whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision"). In addition, several of the documents are not material to the determination of disability at the time the application was filed. See 42 U.S.C. § 405(g); Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (discussing the materiality requirement of 20 C.F.R. § 404.970). Plaintiff may file new applications for DIB and SSI if he believes he became disabled after the ALJ's decision. See 20 C.F.R. §§ 404.620(a)(2), 416.330(b) (stating that if a claimant becomes disabled after the relevant period, he must file a new application).

7

assess the nature and extent of the claimant's physical limitations, and then determine the claimant's RFC for work activity on a regular and continuing basis. See 20 C.F.R. § 404.1545(b). Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including scheduling consultative examinations if necessary. See 20 C.F.R. § 404.1545(a)(3). The ALJ's RFC determination must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's credible complaints. See 20 C.F.R. § 404.1545(a)(3).

Here, the ALJ determined that Plaintiff had the RFC to perform unskilled light work. (R. at 12.) Specifically, the ALJ found that Plaintiff could sit, stand and walk for prolonged periods throughout an eight-hour work day with appropriate breaks and lift weights of up to ten pounds frequently and twenty pounds occasionally. (R. at 13-14.) Nonexertionally, the ALJ concluded that Plaintiff's depression and related symptoms, combined with his intellectual functioning, required a limitation to unskilled work that did not require reading and writing as an essential part of the job. (R. at 15.)

In reaching his conclusions, the ALJ conducted a thorough review of the medical records during the time period relevant to Plaintiff's disability claim. (R. at 11-16.) The ALJ first considered Plaintiff's hearing testimony, in which he indicated that he is currently able to sit for ten to fifteen minutes, stand for ten to fifteen minutes, walk three to four blocks, and carry a gallon of milk. (R. at 13, 24-25.) Plaintiff testified that he tore his rotator cuff in 2006 and required surgery, but that his shoulder is "better" now. (R. at 13, 33.) Plaintiff also stated that he is depressed, sees a psychiatrist twice a month, and has crying spells, memory loss, and hears

voices. (R. at 13, 37-38.) The ALJ, however, did not find Plaintiff's testimony to be credible based on the objective medical evidence. (R. at 13.) In particular, Plaintiff's complaints of body and knee pain were unsubstantiated based on conservative medical treatment and generally unremarkable physicals examinations by both consultative examiners and Plaintiff's treating physicians. (R. at 13, 194-207, 274-81.) In addition, Plaintiff's assertion that he cannot read or write was inconsistent with performance at his past work as an auto mechanic, where he was required to write and complete reports, as well as his ability to read and fill out forms during consultative examinations. (R. at 14, 199-207.) The ALJ concluded that Plaintiff may have a limited ability to read and write, which he took into account in concluding that Plaintiff is limited to unskilled work, but the ALJ also noted that Plaintiff is not illiterate, and for that reason the Grids direct a finding of "not disabled." (R. at 14-15.) Furthermore, the ALJ noted that Plaintiff has not required psychiatric hospitalization and that his psychiatric symptoms respond to medication. (R. at 14.) Plaintiff also lives independently with his two children, takes care of his personal needs, does household chores, shops, and uses public transportation. (R. at 14-15, 40-42.) The ALJ found that such activities are inconsistent with a severe mental disorder that would preclude all work-related activity. (R. at 15.)

      A review of the record demonstrates that the ALJ's RFC analysis was thorough and that it was supported by the substantial weight of the evidence. In October 2005, Plaintiff reported to an orthopedic surgeon (Dr. Fleming) with left shoulder pain and an inability to abduct[7] his shoulder. (R. at 265.) Dr. Fleming noted that an x-ray examination of Plaintiff's left shoulder showed degenerative arthritis of the acromioclavicular joint and chronic rotator cuff irritation.

---

[7]Abduct means "to draw away from the median plane or (in the digits) from the axial line of a limb." Saunders, <u>Dorland's Illustrated Medical Dictionary</u> 2 (31st ed. 2007).

(R. at 265-66.) In November 2005, Dr. Fleming prescribed Naprosyn[8] for Plaintiff's shoulder pain and injected Plaintiff's right knee with steroids based on Plaintiff's complaints of knee pain. (R. at 256.) In December 2005, an x-ray of Plaintiff's right knee showed degenerative arthritis; Dr. Fleming stated that Plaintiff was unable to work, but that his inability to work would last for less than sixty days. (R. at 248-51.) In March 2006, Dr. Fleming surgically repaired Plaintiff's left shoulder, and by April 2006 Plaintiff displayed a good range of motion and had no need for physical therapy. (R. at 208, 240.) In May 2006, Plaintiff reported right shoulder pain to Dr. Fleming, which the doctor diagnosed as arthritis of the right shoulder and rotator cuff arthopathy. (R. at 238.) In August 2006, Dr. Fleming surgically repaired Plaintiff's right rotator cuff and found no limitation in Plaintiff's ability to lift, carry, stand, walk, or sit. (R. at 234, 269-70, 280.) Dr. Fleming noted that Plaintiff could perform postural activities occasionally, and that Plaintiff's impairments would restrict his ability to reach, push or pull, and work around moving machinery. (R. at 270-71.) In September 2006, an MRI examination of Plaintiff's back revealed a herniated disc on the left side. (R. at 278-79.) In November 2006, Plaintiff complained of disabling pain, but reported to Dr. Fleming that he had been involved in a physical altercation. (R. at 277.) In April 2007, Dr. Fleming surgically repaired carpal tunnel syndrome in Plaintiff's left hand. (R. at 272.) Subsequently, Plaintiff had good mobility, slept better, and voiced no substantial complaints about disabling pain. (R. at 274-75.)

In January 2006, a consultative examiner (Dr. Powell) noted that Plaintiff could walk and sit without difficulty, could bend from the waist while seated, and could mount and dismount the examining table without assistance. (R. at 195-96.) Plaintiff's range of motion in the left

---

[8] Naprosyn is a form of naproxen, which is a nonsteroidal antiinflammatory drug used for treatment of pain and arthritis. Id. at 1251.

shoulder was reduced, but all other areas were normal, and Plaintiff demonstrated full motor strength in both his arms and legs. (R. at 196-97). Dr. Powell concluded that Plaintiff could stand or walk for six hours and sit for six hours in an eight-hour workday and lift weights of ten to twenty-five pounds frequently, but that he was limited to occasional crawling, climbing, kneeling, and crouching, as well as occasional reaching with the left shoulder. (R. at 197-98.)

In December 2006, Plaintiff reported auditory hallucinations to a psychiatrist (Dr. Chellappan). (R. at 294.) Dr. Chellappan prescribed Risperdal[9] and, in January 2007, Cymbalta.[10] (R. at 290, 294.) In February 2007, Plaintiff reported positive results with Cymbalta, and in March 2007 Dr. Chellappan increased Plaintiff's Risperdal based on Plaintiff's report that he became upset and angry easily. (R. at 285-86, 289.) From January 2007 through June 2007, Dr. Chellappan found Plaintiff's behavior and attitude to be within normal limits, with no evidence of delusions, hallucinations, or confusion; he did, however, rate Plaintiff's thoughts as paranoid or suspicious. (R. at 282-90.) In January 2006, Plaintiff met with a mental health consultative examiner (Dr. Dougherty), who observed that Plaintiff appeared alert and oriented, made good eye contact, and denied having hallucinations. (R. at 200-201.) Dr. Dougherty concluded that Plaintiff was "a noncredible claimant" based on inconsistencies between reported symptoms and her observations, and found that Plaintiff could perform simple, repetitive tasks, maintain regular attendance, and interact with co-workers and the public. (R. at 207.) Dr. Dougherty also noted that Plaintiff is likely to deal with stress by complaining of memory problems that are not related to his ability to function and to claim that he cannot

---

[9] Risperdal is a form of risperidone, which is used as an antipsychotic agent. Id. at 1674.

[10] Cymbalta is a form of duloxetine hydrochloride, a reuptake inhibitor used for relief of major depressive disorder. Id. at 580.

understand instructions, despite having the intellectual ability to do so. (R. at 207.)

Finally, in questioning the VE, the ALJ attempted to determine whether Plaintiff would be able to obtain unskilled sedentary work, given his severe impairments. (R. at 50-53.) The ALJ, consistent with the Dictionary of Occupational Titles, asked the VE to characterize Plaintiff's past work, to which the VE responded that a construction laborer is unskilled work with heavy physical demands, a dishwasher is unskilled work with medium physical demands, and a chicken dresser position is unskilled work with light physical demands. (R. at 50). The VE then noted that the ALJ's limitations on overhead reaching would prevent performance as a chicken dresser. (R. at 50-51.) The ALJ then questioned the VE, based on the Plaintiff's RFC determination, whether jobs exist in significant numbers in the national economy for a person limited to unskilled sedentary work and the VE responded that jobs such as an usher or bakery worker entail unskilled light work and are available. (R. at 51.) The VE also noted that reading and writing are not significant requirements of the jobs he identified. (R. at 53.)

Accordingly, the ALJ's determination of Plaintiff's RFC was based on the substantial weight of the evidence and his questioning of the VE properly took into account the different facets of Plaintiff's RFC. The Court recommends a finding that the ALJ's conclusions regarding Plaintiff's RFC determination is based on substantial evidence in the record, with the application of the correct legal standard, and should not, therefore, be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (Docket no. 13) be DENIED; that Defendant's motion for summary judgment (Docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                            /s/
                                        DENNIS W. DOHNAL
                                        UNITED STATES MAGISTRATE JUDGE

Date: October 19, 2009
Richmond, Virginia